IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MARK A. BROOKS,

             Case No. 2:12-cv-225
  Plaintiff,          Judge Gregory L. Frost
             Magistrate Judge Mark R. Abel

v.

OHIO STATE CHIROPRACTIC BOARD, et al.,

  Defendants.

## OPINION AND ORDER

  This matter is before the Court on Plaintiff Mark A. Brooks' Motion for Emergency Temporary Restraining Order ("TRO") and/or Preliminary Injunction (ECF No. 8), Defendants' Memorandum in Opposition (ECF No. 10), and Plaintiff's Reply to Defendants' Memorandum in Opposition (ECF No. 15).  As set forth below, Plaintiff's Motion is **DENIED.**

### I.  Background

  The Court culls the factual background set forth below from the Plaintiff's First Amended Complaint (ECF No. 3) and the materials submitted to the Court in the TRO proceedings.  The factual recitation provided here serves the limited purpose of addressing the immediate Motion for TRO and/or Preliminary Injunction before the Court.  Any finding of fact or conclusion of law made by a district court in addressing a request for injunctive relief is not binding at a trial on the merits.  *See United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004) (citing *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981)).

  Plaintiff is an Enforcement Investigator employed by Defendant Ohio State Chiropractic Board ("OSCB").  (First Am. Compl., ECF No. 3, ¶ 12.)  Defendant Kelly Caudill, the OSCB

Executive Director, is Plaintiff's direct supervisor. (*Id.* at ¶¶ 4, 12; Caudill Aff., ECF No. 10-1, ¶ 2.) In his capacity as Investigator, Plaintiff investigated chiropractic complaints and violations of federal, state, and local laws governing chiropractic practice in the state of Ohio. (Caudill Aff., ¶ 3.) To facilitate the performance of investigatory duties, OSCB issued Plaintiff various items for his use, including an OSCB email account, a Global Positioning System, a cell phone, photo identification, an Ohio Bureau of Motor Vehicles undercover driver's license, a 2010 Ford Focus automobile, and a credit card. (*Id.* at ¶ 5.)

On February 29, 2012, Caudill implemented new work rules and policies that affected Plaintiff's job responsibilities. (First Am. Compl, ¶ 15.) According to Plaintiff, the new policies "drastically changed" his responsibilities. (*Id.*) The day after Caudill implemented the changes, Plaintiff objected to the new rules in an email to Caudill, claiming that they violated the "labor contract" between the state of Ohio and the Ohio Civil Services Employees Association, ASFSCME, Local 11, AFL-CIO (the "Union"). (*Id.* at ¶ 16 and Ex. D.) Just over a week later, on March 9, 2012, Plaintiff emailed OSCB two grievance forms: one of the forms asserted that the newly added job duties violated Article 19 of the Union contract while the other form claimed that Caudill implemented new work rules in violation of Article 44, Section 44.04 of the Union contract. (*Id.* at ¶ 18 and Ex. E.)

On the morning of March 12, 2012, in an e-mail to Plaintiff, Caudill acknowledged receipt of Plaintiff's grievance forms submitted three days earlier. (*Id.*) Twenty-two minutes after receiving Caudill's email acknowledgment, Plaintiff submitted to Caudill his resignation, to be effective on August 3, 2012. (*Id.* at ¶ 19 and Ex. J.) Approximately two hours later, Caudill summoned Plaintiff to report immediately to the Office of Collective Bargaining "for an

administrative investigation." (*Id.* at ¶ 20.)

Plaintiff reported as instructed and, along with a Union steward, met with Defendants Kate Nicholson and James Knight from the Ohio Department of Administrative Services. (*Id.* at ¶¶ 6, 8, 21.) At the conclusion of the interview, Plaintiff was placed on paid administrative leave and ordered to "surrender all State-issued property," including his employee badge and OSCB-issued automobile. (*Id.* at ¶ 22.) State troopers escorted Plaintiff to his OSCB-issued car, from which Plaintiff's personal belongings were seized. (*Id.* at ¶¶ 24, 26-27.)

Plaintiff filed this action on March 14, 2012. (Compl., ECF No. 2.) In his First Amended Complaint, Plaintiff contends that the search and seizure of the OSCB-issued vehicle violated his constitutional rights and that his placement on administrative leave was in retaliation for his filing grievances against Caudill. (First Am. Compl., ECF No. 3, ¶¶ 30-34, 39-53.) Plaintiff also alleges "reputational injury without due process" under 42 U.S.C. § 1983 and a state-law claim for negligent retention. (*Id.* at ¶¶ 35-38, 54-57.) The Motion for TRO and/or Preliminary Injunction now before the Court (ECF No. 8) arises out of events that took place after the filing of this action.

On April 2, 2012, Defendants Nicholson and Knight conducted a "second interview" with Plaintiff, an interview Plaintiff says was ordered "under threat of removal from office." (Mot. for TRO, ECF No. 8, at 3.) The "second interview" was called after Caudill found that a substantial number of emails had been deleted from Plaintiff's OSCB email account. (Caudill Aff., ECF No. 10-1, ¶¶ 8-10.) For his part, Plaintiff disputes that he "deleted" the e-mails; rather, Plaintiff contends that he began "preserving electronically stored information, including over 3,000 email messages from his Ohio State Chiropractic Board email account." (ECF No. 8,

3

at 3-4.) Plaintiff admitted to Nicholson that he moved emails from his OSCB account to an external hard drive. (Nicholson Aff., ECF No. 10-3, ¶ 5.) At the "second interview," Nicholson ordered Plaintiff to produce the *original* emails he "preserved" and further ordered him not to maintain any copy of the materials. (*Id.* at ¶ 6; Mot. for TRO, ECF No. 8, at 4.) Nicholson further advised Plaintiff that his failure to comply with her order would result in the termination of his employment. (ECF No. 8, at 4.)

The following day, Plaintiff filed his Motion for TRO and/or Preliminary Injunction. Plaintiff says he complied with the order by Nicholson "to prevent his removal from office." (ECF No. 8, at 3.)[1] He requests injunctive relief, however, to restrain Defendants from again compelling him to produce "original forms of documents, electronically stored information, and tangible things, items that would otherwise be discoverable pursuant to Rule 26, under threat of removal from office." (*Id.* at 4.) Plaintiff does *not*, however, indicate that he has anything more in his possession other than what he turned over to Defendants on April 3, 2012.

Following the filing of Plaintiff's Motion, this Court convened a S. D. Loc. R. 65.1 telephone conference, in which Plaintiff *pro se* and counsel for Defendants participated. (*See* ECF No. 9.) The parties agreed that the Plaintiff's Motion for TRO and/or Preliminary Injunction would be submitted on the briefs pursuant to the briefing schedule set by the Court. (*Id.*) With the matter now fully briefed, the Plaintiff's Motion for TRO and/or Preliminary Injunction is ripe for this Court's decision.

---

[1] In her affidavit submitted with Defendants' Opposition to Plaintiff's Motion for TRO and/or Preliminary Injunction, Caudill confirms that she received from Plaintiff on April 5, 2012, a compact disc that purportedly contains the emails removed from his OSCB email account. (Caudill Aff., ECF No. 10-1, ¶ 11.) Caudill notes, however, that the disc is "encrypted and password protected" and claims she has been unable to access the disc's contents. (*Id.*)

## II. Discussion

When ruling on a motion for TRO or preliminary injunction, a district court must consider and balance four familiar factors — (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *See e.g. Overstreet v. Lexington-Fayette Urban Cnty. Gov't,* 305 F.3d 566, 573 (6th Cir. 2002). These factors are not hard-and-fast prerequisites that must be met; rather, the Court balances these factors against each other *Id.* Also, a court must be mindful that a preliminary injunction is an extraordinary remedy to be granted "only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Id.*

### A. Likelihood of Success on the Merits

In opposing Plaintiff's motion for injunctive relief, Defendants argue as if the focus of the "likelihood of success" factor is on Plaintiff's ability to show that any of the documents or other electronically stored information in question is somehow related to the merits of this action (and thereby discoverable). But this mode of analysis confuses the issue. While the Plaintiff's requested relief concerns, at its core, a discovery issue, the operative inquiry under the "likelihood of success" factor is whether the movant demonstrates a likelihood of success *on the merits of the action*.

Even as properly framed, this factor does not favor Plaintiff at this juncture. Generally speaking, the merits of this action center on Plaintiff's allegations that he was subject to an illegal search and seizure and that the Defendants' actions were retaliatory for Plaintiff having

filed Union grievances against Defendant Caudill. (First Am. Compl., ECF No. 3, at ¶¶ 16-18, 22-29, 49-53.) For their part, Defendants state that Plaintiff was placed on administrative leave pending an unspecified "administrative investigation" of Plaintiff. (Caudill Aff., ECF No. 10-1, at ¶¶ 6-7.)

On the briefing on Plaintiff's Motion for TRO and/or Preliminary Injunction, the parties have not placed before the Court evidence related to the merits of Plaintiff's action. This is not surprising, as the injunctive relief sought by Plaintiff relates to discovery matters and does not seek interim relief that requires any proof related to the merits of his causes of action. Surprising or not, however, all the Court has before it on the *merits* of the action are unsworn allegations of wrongdoing by Defendants with little in response from Defendants to address the allegations. On the state of the record before it, the Court cannot say that Plaintiff has demonstrated any likelihood of success on the merits of his substantive claims.

### B. Irreparable Harm

Even if this Court were to treat the allegations in Plaintiff's *pro se* First Amended Complaint as some demonstration of his ability to succeed on the merits, the irreparable harm factor poses an insurmountable barrier to Plaintiff's request for injunctive relief. Plaintiff has not demonstrated the sort of harm for which a TRO or preliminary injunction is appropriate.

The harm for which Plaintiff seeks injunctive relief relates to his fear that evidence will be altered, destroyed, or lost. That is, he says that if he is forced to turn over original materials (*e.g.*, electronically stored information or other documents), at peril of termination of employment, there may be harm done to his case because "Plaintiff will never know if the emails delivered to defendants will be the same emails, in their entirety and unaltered state, [as the

emails that will be] delivered to plaintiff during discovery" during this litigation.  (Mot. for TRO, ECF No. 8, at 3.)  This sort of harm, however, is ill-suited for issuance of a TRO or preliminary injunction, as it is not truly "irreparable."

Plaintiff must demonstrate that injunctive relief is the only way of protecting him from *immediate* irreparable harm of which he complains; injunctive relief is not available for harm that will occur in the indefinite future.  *See Campbell Soup Co v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992).  Based on the record before the Court, Plaintiff cannot make this showing.  Plaintiff admits that he has already turned over original e-mails to the OSCB in response to the order from Defendant Nicholson.  Plaintiff does not allege that there are additional original emails or documents that he has been ordered to return upon peril of employment termination.  Rather, he seeks injunctive relief "with respect to future activity," to assure that the OSCB cannot *again* make him return original documents "under threat of removal from office."  (Pltf. Reply, ECF No. 15, at 2.)  The extraordinary relief of a TRO or preliminary injunction is not designed to address this sort of indefinite "future" harm.

Moreover, the harm of which Plaintiff complains is not "irreparable" because there are mechanisms to address his discovery-related concerns in the normal course of litigation.  Plaintiff has, in fact, already utilized one of these methods, as his Motion for TRO indicates that he has already sent a "demand for preservation" letter to OSCB (through its counsel), placing Defendants on notice that they should preserve all electronically stored information that may be discoverable under Fed. R. Civ. P. 26.  (Pltf. Mot. for TRO, ECF No. 8, Ex. A-2.)  In addition, Plaintiff may be able to obtain properly tailored discovery orders designed to ensure preservation of discoverable materials.  Though Plaintiff fears spoliation of the "original" evidence, the

Federal Rules of Civil Procedure have sufficient mechanisms in place to allay that fear: Defendants engage in such chicanery at peril of discovery sanctions under Fed. R. Civ. P. 37. *See LaMonte Tumbling v. Merced Irrigation Dist.*, No. CV F 08-1801, 2009 U.S. Dist. LEXIS 80853 (E.D. Cal. Aug. 21, 2009) (denying a request for a "discovery" TRO when the alleged harm was compensable by monetary damages or discovery sanctions under Fed. R. Civ. P. 37); *Teneco Auto. Operating Co., Inc. v. Kingdom Auto Parts*, No. 08-cv-10467, 2009 U.S. Dist. LEXIS 11731 (E.D. Mich. Feb. 17, 2009) (enjoining discovery by way of a TRO is improper given the availability of a protective order under Fed. R. Civ. P. 26).

For these reasons, the Court finds that Plaintiff has not shown irreparable harm that is properly redressable through a TRO or preliminary injunction. Plaintiff cannot use the extraordinary relief of a TRO or preliminary injunction to obtain what amounts to a discovery order obtainable through the normal discovery process under the civil rules.

### C. Harm to Others and Public Interest

In light of the failure of Plaintiff to show a likelihood of success on the merits or irreparable harm, there is no need for the Court to examine the remaining factors that govern issuance of a TRO or preliminary injunction. Though the Court has considerable doubt as to whether even these last two factors would favor Plaintiff, it is not required to balance them under these circumstances. A district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue. *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003); *see also Moore v. Warden, Pickaway Cnty. Corr. Inst.*, No. 2:11-cv-132, 2011 U.S. Dist. LEXIS 106539, at *14 (S.D. Ohio Sept. 20, 2011) (declining to address final two injunctive relief factors when

plaintiff had failed to demonstrate likelihood of success on the merits or irreparable harm), *aff'd and adopted*, 2011 U.S. Dist. LEXIS 134157 (S.D. Ohio Nov. 21, 2011).[2]

### III.  Conclusion

For the foregoing reasons, Plaintiff's Motion for Emergency Temporary Restraining Order and/or Preliminary Injunction (ECF No. 8) is **DENIED.**

**IT IS SO ORDERED.**

/s/ Gregory L. Frost
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**

---

[2]The Court has some concern about Plaintiff's apparent act of transferring emails from his OSCB email account to an external device and then taking that electronically stored information with him.  Plaintiff characterizes his actions as "preserving electronically stored information."  (Mot. for TRO, ECF No. 8, at 2.)  Regardless of how Plaintiff characterizes them, his actions strike the Court as self-help discovery of a brazen sort that could be viewed as a misappropriation of state property.  Defendants do not, however, raise an issue of Plaintiff's unclean hands as a basis upon which to deny injunctive relief.  *See Performance Unlimited, Inc., v. Questar Publishers*, Inc., 52 F.3d 1373, 1383 (6th Cir. 1995) ("The concept of unclean hands may be employed by a court to deny injunctive relief where the party applying for such relief is guilty of conduct invovling fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party.").